# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF WILLIAM HEIN and ARLENE HEIN, | CV 14-55-BLG-SPW-CSO |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | |
| UNITED STATES OF AMERICA, DEPARTMENT OF THE INTERIOR, | |
| Respondent. | |

Plaintiffs Estate of William Hein and Arlene Hein ("the Heins")

seek to quiet title to certain real property contiguous to Arrow Creek

and south of and along the Yellowstone River between Worden and

Pompey's Pillar in Montana. *First Am. Cmplt. to Quiet Title (ECF 34)*[1];

*Memorandum in Support of United States' Mtn. to Dismiss (ECF 37) at*

*2.* Now pending is Respondent United States' motion to dismiss

brought under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure.[2] *Mtn. to Dismiss (ECF 36).* For the reasons that follow, the

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

[2]References to rules are to the Federal Rules of Civil Procedure unless otherwise noted.

Court enters the recommendations discussed below.

I. **BACKGROUND**[3]

The Heins own parcels of real property which they describe as follows:

Lot 11, Section 21, T.3N., R.29E., PMM;

Lots 9 through 18, Section 22, T.3N., R.29E., PMM; and

Lots 3, 13, 14, 15, and 16, Section 23, T.3N., R.29E., PMM.

*ECF 34 at ¶¶ 3, 21, and 27.* The parcels are in an area that once was part of the Crow Indian Reservation.

As this Court described it in *Crow Tribe of Indians v. United States*, 657 F.Supp. 573, 575 (D. Mont. 1985), *rev'd on other grounds*, 819 F.3d 895 (9th Cir. 1987):

> The Crow Reservation was first set apart by the Treaty of Fort Laramie, 11 Stat. 749 (1851), and encompassed 38.5 million acres in what is now southern Montana and northern Wyoming. The second Treaty of Fort Laramie, entered into in 1868, 15 Stat. 649, reduced the Crow Reservation to 8 million acres situated entirely within what is now the State of Montana. The 1868 treaty set apart the reservation for the absolute and undisturbed use and occupation of the Crow Tribe. *Montana v. United States*,

_____

[3]The Court compiled the background facts from the Heins' First Amended Complaint, the parties' submissions related to the United States' motion to dismiss, and the cases cited. The facts are undisputed unless otherwise noted.

450 U.S. 544, 547-48 (1981).

The 1868 Treaty of Fort Laramie ("1868 Treaty") also established

the boundaries of the Crow Indian Reservation as follows:

> "[C]ommencing where the 107th degree of longitude west of Greenwich crosses the south boundary of Montana Territory; thence north along said 107th meridian to the mid-channel of the Yellowstone River; thence up said mid-channel of the Yellowstone to the point where it crosses the said southern boundary of Montana, being the 45th degree of north latitude; and thence east along said parallel of latitude to the place of beginning...." Second Treaty of Fort Laramie, May 7, 1868, Art. II, 15 Stat. 650.

*Montana v. United States*, 450 U.S. 544, 553 n.4 (1981). Thus, the

Crow Indian Reservation was bounded on the north and west by the

mid-channel of the Yellowstone River.

As noted by the Ninth Circuit in *Fidelity Exploration and*

*Production Co. v. United States*, 506 F.3d 1182, 1184-85 (9th Cir. 2007):

> Montana joined the Union in 1889. By virtue of the Enabling Act of Feb. 22, 1889, 25 Stat. 676, it did so "on an equal footing with the original States . . . ." *Id*. at 679. Accordingly, Montana along with all new states held title to the land that lay under navigable waters at the time of statehood; this title could, however, be defeated by a "prestatehood conveyance of the land to a private party for a public purpose appropriate to the Territory[,]" *Utah Div. Of State Lands v. United States*, 482 U.S. 193, 197 (1987), or by a reservation of submerged lands to keep them "under federal control for an appropriate public purpose," *United States v. Alaska*, 521 U.S. 1, 33-34 (1997).

Before and shortly after Montana's entry into the Union in 1889, the Crow Indian Reservation boundaries changed somewhat.

> The 1868 treaty was followed by three major cessions of territory by the Crow Tribe:  the Act of April 11, 1882, 22 Stat. 42, the Act of March 3, 1891, 26 Stat. 989, and the Act of April 27, 1904, 33 Stat. 352.  The third, 1904, cession reduced the Crow Reservation to its present boundaries and created the "ceded strip," an area consisting of about 1,137,500 acres which lies to the north of the acknowledged reservation.

*Crow Tribe of Indians v. United States*, 657 F.Supp. at 575.

The Heins' parcels at issue in this action are within the so-called ceded strip.  The Heins and their predecessors, through a series of patents issued between 1918 and 1960, acquired the parcels, which lie south of and are bounded on the north by the Yellowstone River in the Huntley Reclamation Project irrigation district.  *ECF 37-1 – 37-7*.[4]

Through the action now before the Court, the Heins seek to quiet title to the parcels.  They claim in Counts I and II of their First Amended Complaint that when the lots at issue were surveyed, "one or more of their boundaries was the high water mark of the Yellowstone

---

[4]The Court notes that none of the patents filed by the United States in support of its motion to dismiss include Lot 16, Section 23.  In responding to the motion, the Heins did not discuss the ownership of Lot 16, Section 23.

River" and that "[b]y Montana [l]aw, they also own the land to the low water mark of the Yellowstone River" so that the lots "were conveyed to the water." *ECF 34 at ¶¶ 17 and 23.* In Count III, they claim that when the lots at issue were surveyed, "one or more of their boundaries was the high water mark of Arrow Creek (or a branch of the Yellowstone River)" and that "[b]y Montana [l]aw, they also own the land to the low water mark of Arrow Creek , or if it is deemed a non-navigable body of water, the middle of Arrow Creek . . ." so that "these lots were conveyed to the water, or the middle of the creek." *Id. at ¶ 29.*

The Heins named the United States of America as a defendant as "the former owner of the Lots in question as well as the owner of land surrounding these parcels." *Id. at ¶ 4.* They named the Department of the Interior because it "is the department of the federal government to which Congress delegated specific authority to administer the public lands under federal law." *Id. at ¶ 5.* The Heins assert that

> a controversy exists as to whether the Ceded Strip, which includes the Lots at issue, was or was not transferred to [the] State of Montana at Statehood as it was then part of the Crow Indian Reservation. A similar controversy exists with respect to the Yellowstone River and its bed located within the Ceded Strip.

*Id. at ¶ 9.*

## II.   <u>PARTIES' ARGUMENTS</u>

The United States advances two principal arguments in moving for dismissal of the Heins' action.  First, it argues that the Court lacks subject matter jurisdiction because the Heins failed to file their action within the Quiet Title Act's 12-year statute of limitations.  *ECF 37 at 4-12.*

Specifically, the United States argues that: (1) subject to certain exceptions, the United States' sovereign immunity may be waived where, as here, an adverse claimant challenges the United States' title to real property under the Quiet Title Act ("QTA"), *id. at 5-6*; (2) as a jurisdictional prerequisite, a QTA claim must be brought within 12 years of the claim's accrual, *id. at 6*; (3) the claim's accrual is determined by the date the claimant or claimant's predecessor in interest knew or should have known of the United States' claimed interest, *id. at 7*; (4) whether a claimant should have known is determined under a reasonableness test, *id.*; (5) here, the Heins' predecessors in interest knew or should have known of the United States' interest in the properly as early as 1868 because the 1868

Treaty reserved the subject land for the Crow Indians up to the mid-channel of the Yellowstone River and the banks of Arrow Creek, *id. at 8*; (6) the United States exercised its prerogative, through the 1868 Treaty, to confer riparian lands south of the mid-channel of the Yellowstone River to the Crow Indians so that Montana, when it became a state in 1889, could not take title to the bed and banks of the subject portion of the Yellowstone River or to the banks of Arrow Creek, *id. at 8-9*; (7) "[s]ince 1868, the United States has continuously held title to the south half of the Yellowstone River[,]" a fact the Heins' predecessors should have known, making the Heins' current claims 134 years too late, *id. at 9-10*; and (8) the Heins or their predecessors also should have known of the United States' claim to the parcels when the patents were issued – between 1918 and 1960 – because such grants from the United States do not pass title below the high-water mark absent explicit language not present in the subject patents, so the QTA statute of limitations expired no later than 1972, which is more than 42 years ago, *id. at 10-11*.

Second, the United States argues that the Court should dismiss the Heins' claims because the Heins have failed to state a claim upon

which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P. *Id. at 12-14.* It argues that the Heins' First Amended Complaint brought under the QTA fails to identify with sufficient particularity the "right, title, or interest" that they claim. Specifically, the United States argues that it cannot be discerned from the Heins' allegations precisely to what real property they seek to quiet title. *Id. at 12.* Although the Heins identify "aliquot part lot descriptions," the United States argues, "those lots are not the real property where [the Heins] seek to quiet title[,]" but rather they "seek to acquire title to real property on the opposite side of the lot boundaries they say were defined by the high water marks of the Yellowstone River and Arrow Creek in 1922." *Id. at 13.* Because the boundaries described by the 1922 survey have since changed because of the natural flow of the Yellowstone River, the United States argues, neither it nor the Court can "discern from the First Amended Complaint the current actual locations of the high and low water marks of the Yellowstone River or Arrow Creek." *Id.* Thus, it argues, such lines might now, after 93 years, "currently sit[ ] atop a third party's ownership interest." *Id.* Because of the imprecision of the Heins' allegations, the United States argues, it "and the Court cannot

assess the propriety of [the Heins'] requests, or determine if third parties are necessary for this adjudication[,]" so the Heins have failed to "set forth with particularity the title which they seek to quiet through these QTA proceedings[,]" and their complaint fails to state a claim. *Id. at 14* (internal quotations omitted).

In response, the Heins first argue that their claims under the QTA are not untimely as argued by the United States. *Heins' Resp. Br. (ECF 40) at 5-10.* They argue that: (1) as an initial matter, the United States apparently concedes that it has no valid claim of interest in those portions of the parcels at issue between the meander line and the high water mark because it did not mention the area in its brief, *id. at 6*; (2) the United States no longer has an interest in the land below the high water mark under the Treaty of 1868 because: (a) the United States Supreme Court, in *Montana v. United States*, 450 U.S. 544 (1981), held that the Crow treaties did not overcome the presumption that the beds of navigable rivers remain in trust for future states and pass to the new states when they achieve statehood, *id. at 7-8*; (b) even though the case dealt with the bed of the Bighorn River, the same reasoning applies to the bed of the Yellowstone River; and (c) when

Montana became a state in 1889, it obtained the bed of the Yellowstone River, *id. at 8*; (3) because the United States did not retain ownership of the bed of the Yellowstone River, the Heins and their predecessors could not have reasonably known that the United States claimed an interest in the riverbed and the Heins' claims thus are not untimely under the QTA, *id. at 9*; and (4) the patents would not have put a reasonable person on notice of any claim by the United States to the portion of the parcels below the high water mark because: (a) as noted, that land was conveyed to Montana when it became a state in 1889, which predated issuance of all of the patents; (b) Montana law provides that a riparian land owner owns to the low water mark of navigable rivers; (c) thus, it would be reasonable for the Heins and their predecessors to assume that they owned the land to the low water marks, regardless of the patents' wording, *id. at 9-10*.

Second, the Heins argue that, to the extent the United States' motion is brought under Rule 12(b)(6), it should fail because they have described the right, title, and interest that they claim with sufficient particularity. *Id. at 10.* They argue that their claims describe the specific lots involved, allege their ownership of them, and adequately

describe the portions of the lots at issue.  *Id. at 10-11*.  Also, they request that, if the Court concludes that they did not adequately allege their right, title, or interest with the required specificity, the Court afford them the opportunity to amend to cure any defects.  *Id. at 11-12*.

In reply, the United States argues that the Heins' reliance on *Montana v. United States*, 450 U.S. 544 (1981), is misplaced for two reasons.  First, it challenges the Heins' position that the United States no longer has an interest in the land below the high water mark of the Yellowstone River because of the Supreme Court's holding in *Montana v. United States*.  *United States' Reply Br. (ECF 43) at 2-4*.  It argues that the case dealt with the Bighorn River, which lies completely within the boundaries of the Crow Indian Reservation.  The instant case, on the other hand, involves the Yellowstone River, which is different, it argues, because it "is explicitly referenced in the verbiage of the 1868 Treaty" making it "a better candidate for preemption of state title when Montana entered the Union[.]" *Id. at 3*.

Second, the United States argues, the Yellowstone River defined part of the boundary of the Crow Indian Reservation so that "conveyance to Montana of all the bed and banks [of the Yellowstone

River] would confound the explicit boundary designation." *Id*. A river as a boundary, the United States argues, "creates different potential problems than a river wholly encompassed because, on the border, claims and competing uses from adjacent non-Indian interests are a certainty." *Id*. This use of the river as a boundary for the creation of an Indian Reservation, it argues, may be an "appropriate public purpose" that allows Congress to reserve and set aside federal land interests to preempt a state from acquiring such interests upon achieving statehood. *Id*.

Finally, the United States argues that the Heins are not excused from the QTA's prerequisite for particularity for claims pleading simply because the real property at issue is adjacent to rivers with constantly changing high and low water marks. *Id. at 4-6*. It argues that although "the water levels may vary over the course of days or weeks, [the Heins] offer nothing to suggest that the ordinary high water mark, i.e., the line where the water stands sufficiently long to destroy vegetation below it, is subject to such ephemeral vicissitudes." *Id. at 6* (citation and internal quotation marks omitted). Because the Heins have failed to specifically allege the nature of the interests where they

seek to quiet title, the United States argues, the Court must dismiss their QTA claims for failure to state a claim under Rule 12(b)(6) *Id*.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Rule 12(b)(1) allows a defendant to raise the defense, by motion, that the Court lacks subject matter jurisdiction over an entire action or over specific claims alleged in the action.  And, of course, a federal court always "ha[s] an independent obligation to address sua sponte whether [it] has subject-matter jurisdiction."  *Dittman v. California*, 191 F.3d 1020, 1025 (9ᵗʰ Cir. 1999).  "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact."  *Thornhill Publishing Co. v. General Tel. & Elect. Corp.*, 594 F.2d 730, 733 (9ᵗʰ Cir. 1979).

When, as here, a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction, no presumption of truthfulness attaches to the plaintiff's allegations.  *Id*.  "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the

existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has the burden of establishing that such jurisdiction does in fact exist. *Thornhill Publishing Co.*, 594 F.2d at 733.

## B.  Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556

U.S. 662, 677-678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 2014 WL 4290615, *10 (9th Cir. 2014).

A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F.Supp. 299, 304 (C.D. Cal. 1996) (*citing Western Mining Council v. Watt*, 643 F.2d 618,

624 (9ᵗʰ Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9ᵗʰ Cir. 1990) (citations omitted). But a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *Id*.; *see also Branch v. Tunnel*, 14 F.3d 449, 454 (9ᵗʰ Cir. 1994).

## IV.  DISCUSSION

### A.  The United States' Rule 12(b)(1) Motion

As noted, the United States first argues that the Heins' QTA action is barred by the applicable statute of limitations, thus depriving this Court of subject matter jurisdiction. *ECF 37 at 4-12.* On the current record, the Court concludes that the jurisdictional issue and the substantive issues in this quiet title action are so intertwined that the jurisdictional determination necessarily must await the determination of relevant facts, either through a motion on the merits or at trial. *Augustine*, 704 F.2d at 1077. Thus, the Court, for the reasons that

follow, will recommend that the motion to dismiss be denied to the extent it is premised on Rule 12(b)(1).

The QTA "waives the federal government's sovereign immunity to certain civil actions by plaintiffs seeking to quiet title to property in which the United States claims an interest." *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). The QTA provides, in relevant part:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights.

28 U.S.C. § 2409a(a). The QTA's limitations period is set forth in 28 U.S.C. § 2409a(g), as follows:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(g). "Knowledge or notice of such a claim is subject to a test of reasonableness." *LNG Development, LLC v. U.S. Army Corps of Engineers*, 2015 WL 5155079, *6 (D. Ore., Aug. 31, 2015) (*citing McIntyre v. United States*, 789 F.2d 1408, 1411 (9th Cir. 1986);

*California ex rel. State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9ᵗʰ Cir. 1985) (finding that "the words 'should have known' ... impart a test of reasonableness" and that the government need not "communicate its claim in clear and unambiguous terms")).  "Although ordinarily the defendant bears the burden of proving an affirmative statute of limitations defense, here the statute of limitations is jurisdictional, and, '[w]hen subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.'" *Kingman Reef Atoll Investments,* 541 F.3d at 1197 (citation omitted).

"The court must strictly construe the Quiet Title Act's statute of limitations in favor of the government." *Shultz v. Dep't of Army*, 886 F.2d 1157, 1159 (9ᵗʰ Cir. 1989).  Thus, "[k]nowledge of the claim's full contours is not required.  All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *LNG Development*, *supra* (*quoting Kingman Reef Atoll Investments, L.L.C. v. United States*, 545 F.Supp.2d 1103, 1110-11 (D. Hawai'i 2007), *aff'd*, 541 F.3d 1189 (9ᵗʰ Cir. 2008)).  And, the QTA's "statute of limitations applies retroactively," so that it is not relevant

whether the plaintiffs' predecessors in interest were put on notice of any interest by the United States in the real property at issue before enactment of the QTA. *Kingman Reef Atoll Investments*, 541 F.3d at 1197 (*quoting Donnelly v. United States*, 850 F.2d 1313, 1318 (9th Cir. 1988) (*citing Block v. North Dakota*, 461 U.S. 273, 284 (1983)).

"The Supreme Court has held that this limitations period is 'a central condition of the consent given by the Act.'" *Fidelity Exploration and Production Co. v. United States*, 506 F.3d 1182, 1185-86 (9th Cir. 2007) (*quoting United States v. Mottaz*, 476 U.S. 834, 843 (1986)). "It is therefore subject to the rule that 'when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.'" *Id*. at 1186 (*quoting Block*, 461 U.S. at 287). And, "although a court 'should not construe such a time-bar provision unduly restrictively,' it must 'be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended.'" *Id*. (*quoting Block*, 461 U.S. at 287). Where, as here, a claimant seeks "fee title [to the property at issue as opposed to a non-possessory interest such as an easement], 'notice of a government claim that created even a

cloud on the title may be sufficient to trigger the limitations period.'"
*McFarland v. Norton*, 425 F.3d 724, 726 (9th Cir. 2005) (*quoting Michel
v. United States*, 65 F.3d 130, 132 (9th Cir. 1995) (citation omitted)).

In the case at hand, the Heins filed their Complaint on April 29,
2014. *Cmplt. (ECF 1) at 1*. Thus, to fall within the QTA's 12-year
limitations period, their quiet title action against the United States
would have had to accrue on or after April 29, 2002. Based on the
foregoing authority, if the Heins' action accrued before April 29, 2002,
the Court lacks subject matter jurisdiction over the action. *Id.* ("[W]e
treat the statute of limitations in the QTA as jurisdictional."); *see also
Kingman Reef Atoll Investments, LLC*, 541 F.3d at 1195-96 (9th Cir.
2008) (*quoting Block*, 461 U.S. at 292) ("The running of the twelve-year
limitations period deprives federal courts of 'jurisdiction to inquire into
the merits' of an action brought under the QTA.").

Having considered the parties' arguments and submissions in light
of the authority discussed above, the Court is unable to conclude, on the
current record, whether the Heins or their predecessors in interest
knew, or should have known, of an interest by the United States in the
subject real property before 2002. In part because of the lack of

particularity in the Heins' First Amended Complaint, discussed *infra*, it is unclear whether the United States claimed any interest or reasonably could have claimed any interest in the subject land during the relevant time frame. The record is not sufficiently developed at this point to make such a determination, and it would be premature at this juncture in the proceedings for the Court to do so.

As noted above, the 1868 Treaty, in establishing the boundaries of the Crow Indian Reservation, provided that all lands up to the mid-channel of the Yellowstone River fell within the reservation, as follows:

> "[C]ommencing where the 107th degree of longitude west of Greenwich crosses the south boundary of Montana Territory; thence north along said 107th meridian to the mid-channel of the Yellowstone River; thence up said mid-channel of the Yellowstone to the point where it crosses the said southern boundary of Montana, being the 45th degree of north latitude; and thence east along said parallel of latitude to the place of beginning...." Second Treaty of Fort Laramie, May 7, 1868, Art. II, 15 Stat. 650.

*Montana v. United States*, 450 U.S. 544, 553 n.4 (1981). The Heins do not dispute in their response to the United States' motion that this treaty encompassed the parcels at issue in this action, including the real property below the high water mark of the Yellowstone River and the banks of Arrow Creek.

But, as noted, subsequent Acts of Congress resulted in "major cessions of territory by the Crow Tribe[,]" at least one of which reduced the reservation to its present boundaries and created the ceded strip. *Crow Tribe of Indians v. United States*, 657 F.Supp. at 575. And the current record does not shed any light on whether the cessions of land affected the parcels at issue here. For example, the record does not address: (1) the timing of the cession by the Crow Tribe of the specific parcels at issue in this case (likely, in part, because of the lack of specificity in their descriptions, as discussed *infra*); (2) whether the United States then held them in trust for the Crow Tribe; or (3) whether the United States otherwise conveyed them in a way that could have defeated Montana's title to the land at the time it achieved statehood. *See Fidelity Exploration*, 506 F.3d at 1184. In other words, there is insufficient information of record to permit the Court to determine whether the Heins' predecessors in interest should have known that the United States claims some interest in the land that is adverse to them.

Because of the lack of information in the current record respecting the land at issue, the patents filed by the United States in support of its motion are of limited use. If, as the Heins contend, the land at issue

was conveyed to Montana when it became a state in 1889, the Heins'

predecessors in interest would have no reason to know of any claimed

interest in the land by the United States. At this point, and on the

current record, the Court is simply unable to make that determination.

For these reasons, the Court concludes that the United States'

motion to dismiss for lack of subject matter jurisdiction should be

denied. After further development of the record, however, the United

States, if appropriate, should be permitted to renew its motion on this

basis.

**B.    The United States Rule 12(b)(6) Motion**

The United States argues that the Heins have failed to state a

claim upon which relief can be granted because they have failed to

identify with sufficient particularity the right, title, or interest that they

claim. *ECF 37 at 12-14.* The Court agrees.

The QTA requires that a complaint "set forth with particularity

the nature of the right, title, or interest which the plaintiff claims in the

real property, the circumstances under which it was acquired, and the

right, title, or interest claimed by the United States." 28 U.S.C. §

2409a(d). The Ninth Circuit has determined that, in the context of

§ 2409a(d), "set forth with particularity" means that a plaintiff must state allegations describing "the nature of the right, title, or interest which the plaintiff claims in the real property" with "a great deal of specificity." *McMaster v. United States*, 731 F.3d 881, 897-98 (9th Cir. 2013).  Failure to do so subjects the complaint to dismissal under Rule 12(b)(6).

Here, reviewing the allegations in the Heins' First Amended Complaint, the Court concludes that they have failed to include in their allegations the requisite specificity to comply with § 2409a(d).  They have not set forth with precision the real property over which they seek to quiet title.  Although they describe certain lots, the lots themselves are not the land at issue.  Rather, they seek to quiet title to certain real property that they define by meander, high, and low water marks on the Yellowstone River and Arrow Creek from a survey conducted in 1922 – boundaries that they acknowledge have changed "by the natural causes of the flow" of water over the years.  *ECF 34 at ¶¶ 18, 24, and 30.*  As noted by the United States, in the 93 years since the 1922 survey, it is quite possible that the marks could have moved enough that they might overlap with land under ownership that is not involved in this action.

Without more information, it is impossible to tell.

Based on the foregoing, the Court concludes that the Heins have not "set forth with particularity" the title which they seek to quiet through this QTA action, and their First Amended Complaint should be dismissed for failure to state a claim. When a Rule 12(b)(6) motion is granted, leave to amend should be granted unless doing so would be futile. *See, e.g., Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000). Here, the Court concludes that amendment of the complaint would not be futile, so further recommends that the Heins be afforded an opportunity to amend to correct the deficiencies in their current pleading.

## V.    **CONCLUSION**

Based on the foregoing, IT IS RECOMMENDED that the United States' motion to dismiss (*ECF 36*) be DENIED to the extent it seeks dismissal based on Rule 12(b)(1), but GRANTED to the extent it seeks dismissal based on Rule 12(b)(6), with leave to amend.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that

pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof,

or objection is waived.

DATED this 18th day of November, 2015.

/s/ Carolyn S. Ostby
United States Magistrate Judge